UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**DEBORAH CHERRY**                                                **CIVIL ACTION**

**VERSUS**                                                        **NUMBER 09-0479-JJB- DLD**

**MICHAEL J. ASTRUE**
**COMMISSIONER OF SOCIAL**
**SECURITY**

### REPORT AND RECOMMENDATION

Plaintiff Deborah Cherry seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits ("DIB").

### *Background*

On November 28, 2006, plaintiff filed an application for DIB, claiming a disability onset date of December 15, 1999, due to osteoarthritis of the spine, restless leg syndrome, strokes, high blood pressure, anxiety, depression, and chronic fatigue syndrome. (TR 156) Specifically, plaintiff alleged that these conditions limited her ability to work because she "can't sit for long periods," "can't pick up anything," "falls out at any time", has "panic attacks," experience (sic) constant pain," and "drops glasses due to lack of strength in arms." *Id.*[1]

The claims were denied initially on March 8, 2007.  After filing a timely request for hearing, an administrative hearing was held November 3, 2008, which resulted in an unfavorable decision on January 22, 2009.  In reaching his decision at step four of the evaluation process, the ALJ relied upon the testimony of a vocational expert, and

---

[1] Plaintiff also alleged that she stopped working on November 1, 1999, because she was experiencing dizziness. *Id.*

specifically determined that the plaintiff could do her past relevant work as an insurance administrator. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 15, 1999, through her date last insured of December 31, 2003. At step two, the ALJ determined that plaintiff's restless legs, chronic leg pain, migraine headaches, and mild arthritic disease of the lumbar spine were medically determinable impairments that were severe. At step three, the ALJ found that plaintiff's impairments or combination of impairments did not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 during the relevant time period. At step four, the ALJ found that during the relevant time period, plaintiff had the residual functional capacity to perform the full range of light work. (TR 18-19) Based on these findings and the testimony of the vocational examiner, the ALJ determined that plaintiff could return to her past relevant work, and that her past relevant work as an insurance administrator did not require the performance of work-related activities precluded by plaintiff's residual functional capacity ("RFC"). The ALJ also found that while plaintiff's symptoms could suggest a greater level of severity of impairment than could be shown by the objective medical evidence alone, he found the plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they are inconsistent with the RFC. Thus, the ALJ concluded that plaintiff was not disabled as defined in the Social Security Act. (TR 19)

The plaintiff appealed the unfavorable decision, and the appeal was denied by the Appeals Council on May 27, 2009, making the ALJ's decision the final decision of the Commissioner for purposes of this court. Plaintiff filed suit on July 24, 2009.

### *The Issues*

Plaintiff raises two issues on appeal:

(1) Whether new evidence that arose after the hearing is appropriate for consideration; and

(2) Whether the ALJ erred as a matter of law in failing to obtain medical expert testimony in accordance with SSR 83-20.

### *Governing Law*

The Social Security Act provides for the payment of benefits to persons who have contributed to the program and "who suffer from a physical or mental disability." *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000), *citing* 42 U.S.C. § 423(a)(1)(D)(1991). As used in the Act, the term "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period not less than twelve months. *Id.*, *citing* 42 U.S.C. § 423(d)(1)(A); *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1987).

To determine whether a disability exists for purposes of the Act, the Commissioner must weigh the following elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

In reviewing the Commissioner's decision to deny disability benefits, this Court is limited to a determination of whether the Commissioner's decision was supported by

substantial evidence existing in the record as a whole and whether the Commissioner applied the proper legal standards. *See, e.g., Harrell v. Brown*, 862 F.2d 472, 475 (5th Cir. 1988). Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Id.*

In applying this "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision does exist, but the Court may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute its judgment for the Commissioner's even if the evidence preponderates against the Commissioner's decision. *Id.* A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position. *Id.*

However, the substantial evidence standard of review is not a mere rubber stamp for the Commissioner's decision, and it involves more than a search for evidence supporting the Commissioner's findings. *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Court must scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Id.* Disability is determined by the five-step sequential analysis set forth in 20 C.F.R. §§ 404.1520, 416.920.[2] At steps one through four, the overall burden of proving disability

---

[2] *See also, Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995), wherein the Fifth Circuit explained that "the five-step analysis requires the Commissioner to consider: 1) whether the claimant is presently engaging in substantial gainful activity, 2) whether the claimant has a severe impairment, 3) whether the impairment is listed, or equivalent to an impairment listed in appendix I of the regulations, 4) whether the impairment prevents the claimant from doing past relevant work, and 5) whether the impairment prevents the claimant

under the Social Security Act rests on the claimant. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1985). A finding that a claimant is disabled or not disabled at any step in the five-step process terminates the Commissioner's analysis. *Boyd v. Apfel,* 239 F.3d 698, 705 (5th Cir. 2001.)

### *DISCUSSION AND ANALYSIS*

The threshold issue for this Court to decide is whether or not it has subject matter jurisdiction to review the Commissioner's findings in whole or part, and if so, to determine whether the Commissioner's finding that plaintiff was not disabled is supported by the substantial evidence and was reached by applying the proper legal standards. 42 U.S.C. § 405(g).

### *New Evidence after the ALJ's Decision*

Several months after the hearing decision, on August 7, 2009, one of plaintiff's physicians, Dr. Kevin Callerame, prepared a report in which he diagnosed plaintiff with multiple sclerosis[3] based on the "persistent and progressive plaques noted on the multiple MRI's of her brain." Dr. Callerame noted that he was treating plaintiff with interferon therapy, and further opined that the "onset of her symptoms was around December 2003, when she first presented with the TIA-like symptoms." (rec. doc. 6, exh A) Dr. Callerame also stated that while he could not say "with 100% certainty," based upon plaintiff's

---

from performing any other substantial gainful activity." The five-step inquiry terminates if the ALJ finds at any step that the claimant is or is not disabled. *Id.*

[3]Multiple sclerosis is a "common demyelinating disorder of the central nervous system, causing patches of sclerosis (plaques) in the brain and spinal cord; occurs primarily in young adults , and has protean clinical manifestations, depending upon the location and size of the plaque; typical symptoms include visual loss, diplopia, nystagmus, dysarthria, weakness, paresthesias, bladder abnormalities, and mood alterations: characteristically, the plaques are "separated in time and space" and clinically the symptoms show exacerbations and remissions." *Steadman's Medical Dictionary*, 27th Ed. (2007)

treatment history and presenting complaints, he was of the opinion that plaintiff's condition, "probably started in December 2003," and "would have resulted in a complete inability to function in a day-to-day employment." *Id.*

Plaintiff argues that this report meets the "new evidence" criteria required for remand under 42 U.S.C. § 405(g), and the matter therefore must be remanded under sentence six, clause two, of that statute for consideration of this evidence. In particular, plaintiff asserts that this report indicates that: (1) plaintiff's impairments as of her date last insured (December 31, 2003) were more severe than the evidence of record established; and (2) provides a diagnosis for her symptoms as of the date last insured. In response, defendants assert that even if the plaintiff had multiple sclerosis prior to December 31, 2003, the medical evidence established that she retained the capability to perform work functions after this date, and therefore Dr. Callarame's report does not meet the materiality prong of 42 U.S.C. § 405(g).

Under the provisions of 42 U.S.C. § 405(g), a sixth sentence remand is appropriate under only two circumstances: (1) on motion of the Commissioner for good cause before the Commissioner files an answer; and (2) for consideration of additional evidence upon a showing that the evidence is new and material, and that good cause exists for the claimant's failure to present the evidence earlier. *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).[4] As the request for remand by plaintiff falls under the second circumstance, a review of new evidence by this court is limited to determining whether to remand the case to the Commissioner for consideration of the newly presented evidence. *Haywood v.*

---

[4] *See also, Bradley v. Bowen*, 809 F. 2d 1054, 1058 (5th Cir. 1987); *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985).

*Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989); *Nickerson v. Secretary of Health and Human Services*, 894 F.Supp. 279, 284 (E.D. Tex. 1995).

Under the circumstances presented here, Dr. Callerame's report obviously is new evidence because it was not generated until well after the ALJ's decision.  Likewise, good cause existed for the failure to include this evidence any sooner because the report did not yet exist at the time of the ALJ's decision.  However, a sixth sentence remand also requires a showing of materiality as to the new evidence, and in the Fifth Circuit, new evidence would be material if it relates to the relevant time period for which benefits were denied, and must not concern evidence of a subsequently-acquired disability or of the subsequent deterioration of a previously non-disabling condition.[5] The new evidence would also be material if there is a reasonable possibility the outcome would have been different for the claimant because of this new evidence.  *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994); *Haywood*, 888 F.2d at 1471.

The first hurdle regarding materiality is determining if the evidence relates to the relevant time period.  Because plaintiff's case involves the recovery of disability insurance benefits, she must prove disability prior to the date her insured status expires, *i.e.* before December 31, 2003, in order to receive benefits. *Torres v. Shalala*, 48 F.3d 887, 889 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).[6]  In determining whether Dr. Callarame's report is material as to the relevant time period which expired December 31, 2003, the court notes that Dr. Callarame opined that multiple sclerosis is a disease that

---

[5]*Bradley*, at 1058.

[6]*See also* 20 C.F.R. § 404.131(a) "For a period of disability. To establish a period of disability, you must have disability insured status in the quarter in which you become disabled or in a later quarter in which you are disabled."

slowly progresses over time with a gradual deterioration in overall condition, and that plaintiff's initial symptoms of multiple sclerosis likely began prior to the expiration of her insured status.[7]  This report, though prepared subsequent to the expiration of plaintiff's insured status, clearly relates back to symptoms which occurred before December 31, 2003; and, in the Fifth Circuit,  "subsequent medical evidence is relevant . . . because it may bear upon the severity" of the plaintiff's condition before the expiration of her insured status.  *Loza,* at 396 (5th Cir. 2000), *quoting Ivy v. Sullivan*, 898 F.2d 1045 (5th Cir. 1990).

Thus, Dr. Callarame's opinion is subsequent medical evidence that is relevant to the severity of plaintiff's condition due to the slowly progressive nature of the condition. Additionally, a retrospective medical diagnosis of multiple sclerosis, "even if uncorroborated by contemporaneous medical reports but corroborated by lay evidence relating back to the claimed periods of disability, can support a finding of past impairment." *Ivy*, at 1049, *quoting Basinger v. Heckler*, 725 F.2d 1166 (8th Cir. 1984).  Further, non-contemporaneous medical records such as Dr. Callarame's report are also relevant to the determination of whether the onset date of disability is the date alleged by plaintiff.  *Id.*  Thus, even though Dr. Callarame's report is not a contemporaneous medical record generated during the relevant time period, it is a report that is relevant to the proper determination regarding the alleged onset date, and the diagnosis of multiple sclerosis may be corroborated by lay evidence relating back to that time period.

---

[7] The court also notes that the record is replete with plaintiff's consistent reporting of various symptoms which may have been suggestive of multiple sclerosis. Moreover, some of the severe impairments found by the ALJ to exist may also have been suggestive of multiple sclerosis.

This analysis is consistent with the policy of the Social Security Administration. For example, SSR 83-20 acknowledges that "it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling," and that determining the proper onset date "is particularly difficult, when for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available." *Id.* In such cases, an inference of the onset date must be established "using the medical and other evidence that describe the history and symptomatology of the disease process." Notably, SSR 83-20 also states that "particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (*i.e.*, be decided on medical grounds alone) before onset can be established." *Id.*[8] Here, due to the nature of multiple sclerosis and the passage of so much time, it may be difficult to establish a precise date for the onset of plaintiff's disability, and that onset may be decided on grounds other than just medical grounds, which is a situation precisely addressed by SSR 83-20.

Moreover, Dr. Callarame's report now gives birth to the reasonable possibility that evidence relating to the diagnosis of multiple sclerosis might have changed the outcome of the ALJ's decision. Defendant's argument that the medical evidence established that plaintiff retained the capacity to return to her past work may, in the end, hold true; however, that is not the issue before the court. The only issue facing this court is whether Dr. Callarame's report satisfies the criteria for a sixth sentence remand.[9] The court determines

---

[8] *See also Spellman v. Shalala*, 1 F.3d 357, 363 (5th Cir. 1993), *citing Swanson v. Secretary of Health & Human Services*, 763 F.2d 1061, 1065 (9th Cir. 1985).

[9] In light of the sixth sentence remand, the court does not reach the merits of plaintiff's remaining argument.

that Dr. Callarame's report does satisfy the materiality requirements for a sixth sentence remand, particularly when considering the diagnosis of multiple sclerosis in conjunction with not only the medical evidence, but also the lay evidence as to her condition as it existed before the expiration of her insured status.

### *Conclusion*

The matter therefore may be remanded pursuant to the second clause of the sixth sentence of 42 U.S.C. § 405(g), because new evidence has come to light that was not available to the plaintiff at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceedings.

### *RECOMMENDATION*

Accordingly, it is the recommendation of the magistrate judge that this matter be **REMANDED** to the Commissioner, pursuant to the second clause of the sixth sentence of 42 U.S.C. § 405(g), for further administrative proceedings, including but not limited to, consideration by an administrative law judge of additional evidence and updating of the medical record, and the issuance of a new decision following full consideration of all of the evidence.

Signed in Baton Rouge, Louisiana, on April 8, 2010.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**DEBORAH CHERRY**                                  **CIVIL ACTION**

**VERSUS**                                          **NUMBER 09-00479-JJB-DLD**

**MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY**

<u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have fourteen days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on April 8, 2010.

**MAGISTRATE JUDGE DOCIA L. DALBY**